...



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**TAMMY Y. ASKEW,**

    Plaintiff,

v.                                             Civil Action No. **3:15CV187**

**H. VILLANUEVA, *et al.*,**

    Defendants.

### MEMORANDUM OPINION

Tammy Y. Askew, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] In her Complaint, Askew states:

> On 1-28-15, I was assaulted by two inmates in HU2-1-A at the Hampton Roads Regional Jail [("HRRJ")]. According to the Housing Unit I was housed in there was not suppose[d] to be [any] violent offenders. And that unit was to only house pregnant non-violent offenders and trustees. Defendant #5 Vanessa Benson was not a trustee and was not pregnant. Therefore, she should not have been housed in that particular unit. I was assaulted by defendant #5 Vanessa Benson and also Latisha Harris. Defendant 1 Lt. H. Villanueva & Defendant 3 Capt. Cowan are head of security it took their approval to house a violent offender in that unit leaving me and others at risk that caused the harm on me. Defendant #4 was the classification officer that assigned Vanessa Benson to a non-violent housing unit. Defendant #2 Major Hatchett is chief of Operations that all decisions to where all inmates are housed. I know if all the defendants above would have followed the housing guidelines I would not have been assaulted in that wing by inmate Vanessa Benson. I feel they all caused me to be harmed.

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

(Compl. 5, ECF No. 1.)[2] Askew also contends that prior to the assault, she and several inmates complained to Master Jail Officer Cherry, Officer Hart, Sergeant Cheeseboro, and Sergeant Phillips "about Benson being housed in that particular pod." (ECF No. 1–1, at 1.) The Court construes Askew's Complaint to assert the following claim:

> Claim One: Defendants[3] violated Askew's Eighth Amendment[4] rights by failing to protect her from an assault perpetrated by two other inmates while she was incarcerated at the Hampton Roads Regional Jail ("HRRJ").

(Compl. 5, ECF No. 1.)

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Villanueva, Cowan, and Hatchett (collectively, "Defendants") (ECF No. 13), as well as the Court's Memorandum Order of April 19, 2016, directing Askew to show cause as to why Defendant Stubblefield should not be dismissed without prejudice for failure to serve him in a timely manner. Despite sending appropriate *Roseboro*[5] notice with the Motion for Summary Judgment, Askew has not responded. For the reasons stated below, the Court will GRANT Defendants' Motion for Summary Judgment. The Court will also DISMISS WITHOUT PREJUDICE all claims against Defendant Stubblefield pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

---

[2] The Court utilizes the pagination assigned to Askew's Complaint by the CM/ECF docketing system.

[3] Askew has named the following individuals as Defendants: H. Villanueva, a Lieutenant and Chief of Security at HRRJ; Hatchett, a Major and the Chief of Operations at HRRJ; Cowan, a Captain and Chief of Security at HRRJ; Stubblefield, a Classification Officer at HRRJ; and Vanessa Benson, another inmate at HRRJ. By Memorandum Order entered on October 26, 2015, the Court dismissed all claims against Benson because Benson was not a person acting under color of state law for purposes of 42 U.S.C. § 1983. (ECF No. 6, at 1.)

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## I. FAILURE TO SERVE STUBBLEFIELD

Under the version of Federal Rule of Civil Procedure 4(m)[6] in effect at the time Askew filed her action, Askew had one hundred and twenty (120) days from October 26, 2015 to serve the Defendants. The summons issued as to Defendant Stubblefield was returned as unexecuted. (ECF No. 8, at 11–12.) Accordingly, by Memorandum Order entered on April 19, 2016, the Court directed Askew to "show good cause why the action should not be dismissed without prejudice against Defendant Stubblefield." (ECF No. 16, at 1.) Askew failed to respond to the April 19, 2016 Memorandum Order. Askew has failed to state good cause for her failure to serve Defendant Stubblefield in a timely manner. Accordingly, all claims against Defendant Stubblefield will be DISMISSED WITHOUT PREJUDICE pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

---

[6] Rule 4(m) provided, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

3

depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1871)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submit: (1) an affidavit from Defendant Cowan (Mem. Supp. Mot. Summ. J. Ex. 1 ("Cowan Aff."), ECF No. 14–1); (2) an affidavit from Defendant Villanueva (*id.* Ex. 2 ("Villanueva Aff."), ECF No. 14–2); (3) an affidavit from Defendant Hatchett (*id.* Ex. 3 ("Hatchett Aff."), ECF No. 14–3); (4) an affidavit from Stephen Phillips, a Sergeant at HRRJ (*id.* Ex. 4 ("Phillips Aff."), ECF No. 14–4); (5) an affidavit from Mary Cheeseboro, a Sergeant at HRRJ (*id.* Ex. 5 ("Cheeseboro Aff."), ECF

No. 14–5); (6) an affidavit from Sonya Cherry, a Master Jail Officer at HRRJ (*id.* Ex. 6 ("Cherry Aff."), ECF No. 14–6); and, (7) an affidavit from Linda Hart, an Officer at HRRJ (*id.* Ex. 7 ("Hart Aff."), ECF No. 14–7).

As Askew failed to respond, Askew fails to cite the Court to any evidence that she wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).[7] Askew's complete failure to present any evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants' submissions in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))).

Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Askew.

### III. UNDISPUTED FACTS

Askew was incarcerated at HRRJ from August 6, 2014, until February 10, 2015. (Cowan Aff. ¶ 2; Villanueva Aff. ¶ 2; Hatchett Aff. ¶ 2.) Prior to and on January 28, 2015, Askew, as well as inmates Vanessa Benson and Lakisha Harris, "were classified as medium custody using the Jail's classification system." (Cowan Aff. ¶ 6.) Askew was assigned to housing unit 2-1-A. (Cowan Aff. ¶ 4.) Offenders "housed in HU 2-1-A included those classified as either medium or minimum custody." (*Id.*)

---

[7] Askew submitted an unsworn Complaint. Because Askew failed to swear to the contents of her Complaint under penalty of perjury, the Complaint fails to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

On January 28, 2015, around 4:38 p.m., Sergeant Phillips and Lieutenant Barnes "responded to a Code 10-33 ('officer assistance for inmate disturbance')" in 2-1-A. (Phillips Aff. ¶ 2.) When they arrived at 2-1-A, they observed Askew and Harris fighting in the dayroom. (*Id.* ¶ 3.) "Through the A-side slider's tray slot, [Sergeant Phillips] gave both Inmate Harris and Inmate Askew several verbal directives to stop fighting and lockdown in their assigned cells." (*Id.* ¶ 4.) Harris complied and returned to her cell. (*Id.* ¶ 5.) Askew, however, did not return to her cell; instead, she ran to the cell to which Benson had been assigned. (*Id.*) Askew "held the door of Inmate Benson's cell so that the door could not be secured. She entered the cell and began fighting with Inmate Benson." (*Id.* ¶ 6.)

After other officers arrived and the housing unit was secured, Sergeant Phillips approached Benson's cell. (*Id.* ¶ 7.) He "gave both inmates several verbal directives to stop fighting, but they did not comply." (*Id.* ¶ 8.) Sergeant Phillips then deployed "a short burst of O.C. spray" aimed at the inmates' faces. (*Id.* ¶ 9.) Sergeant Phillips then "ordered both Inmates Askew and Benson to lie face down on the floor so they could be handcuffed. They both immediately complied." (*Id.* ¶ 10.) Askew and Benson were both escorted to the medical department to receive treatment for minor injuries and the use of O.C. spray. (*Id.* ¶ 11.)

Subsequently, Sergeant Phillips investigated the incident. (*Id.* ¶ 12.) Askew informed Sergeant Phillips that the incident started when Harris threw lukewarm coffee on Askew. (*Id.*) Askew then "retaliated against Inmate Harris by hitting her and Inmate Benson, in turn, began hitting Inmate Askew." (*Id.* ¶ 13.) Askew then "retaliated against Inmate Benson by entering Inmate Benson's cell to assault her." (*Id.* ¶ 14.) Sergeant Phillips's "review of the surveillance tape revealed that Inmate Benson did appear to begin hitting Inmate Askew after Inmate Askew started hitting Inmate Harris." (*Id.* ¶ 16.)

Prior to the incident, Askew had not identified Benson or Harris as her enemies "on her Enemy or Keep Separate list." (Cowan Aff. ¶ 8.) Moreover, Askew had never complained about Benson's placement in housing unit 2-1-A to Sergeant Cheeseboro, Master Jail Officer Cherry, Officer Hart, or Sergeant Phillips. (Cheeseboro Aff. ¶ 2; Cherry Aff. ¶ 2; Hart Aff. ¶ 2; Phillips Aff. ¶ 24.) Furthermore, Defendants Cowan, Villanueva, and Hatchett had "no personal involvement in either approving, classifying or determining housing assignments for" Askew, Benson, and Harris. (Cowan Aff. ¶ 3; Villanueva Aff. ¶; Hatchett Aff. ¶ 3 (emphasis omitted).)

## IV. FAILURE TO PROTECT

It is clear that the Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Nevertheless, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *See id.* at 834. The Supreme Court has emphasized that it is *conscious* disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Thus, *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837); *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)).

In *Farmer*, the Supreme Court did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3. However, it is understood that "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates." *Westmoreland v. Brown*, 883 F. Supp. 67, 74 (E.D. Va. 1995). Therefore, a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776–77 (7th Cir. 2008).

This matter turns on whether Defendants knew of a substantial risk of harm to Askew. The courts have found prison officials to be actually aware of a sufficiently substantial risk of assault "where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities." *Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (citing *Brown v. Budz*, 398 F.3d 904, 914–15 (7th Cir. 2005)). "On the other hand, as the vagueness of a threat increases, the likelihood of actual knowledge of impending harm decreases. So, to, does the official's ability to respond." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (internal citation and quotation marks omitted).

Askew has not produced any admissible evidence that Benson and Harris were particularly inclined to assault other inmates. *See, e.g., Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995). Moreover, Askew had not produced evidence reflecting that Defendants knew of any threats by Benson and Harris directed toward Askew. *See Whaley*, 339 F. App'x at 622 (granting summary judgment for defendants because the plaintiff "never told the defendants that [the assailant] had made specific threats to harm him, and he presented no

evidence that any of the defendants knew about [the assailant's] purported propensity for violence"). Here, the named Defendants had no personal involvement in classifying and assigning housing to Askew, Benson, and Harris. (Cowan Aff. ¶ 3; Villanueva Aff. ¶ 3; Hatchett Aff. ¶ 3). Prior to the January 28, 2015 incident, Askew never identified Benson and Harris as her enemies "on her Enemy or Keep Separate list." (Cowan Aff. ¶ 8.) Contrary to her unsupported assertions, Askew also never complained about Benson's placement in housing unit 2-1-A to Sergeant Cheeseboro, Master Jail Officer Cherry, Officer Hart, or Sergeant Phillips. (Cheeseboro Aff. ¶ 2; Cherry Aff. ¶ 2; Hart Aff. ¶ 2; Phillips Aff. ¶ 24.)[8]

Under these circumstances, Askew has not produced sufficient evidence to allow a reasonable juror to infer that Defendants actually perceived that Askew faced a substantial risk of harm from Benson and Harris prior to their assault upon Askew. *See Johnson*, 145 F.3d at 168. As Askew fails to demonstrate that Defendants acted with deliberate indifference, Claim One will be DISMISSED.

## V. CONCLUSION

For the forgoing reasons, Defendants' Motion for Summary Judgment (ECF No. 13) will be GRANTED. Askew's claim against Defendants will be DISMISSED. All claims against

---

[8] The record further reflects that Askew herself instigated and contributed to the incident. After Harris threw lukewarm coffee on Askew, Askew retaliated by hitting Harris, and Benson then began to hit Askew. (Phillips Aff. ¶ 13.) Subsequently, even though Sergeant Phillips had instructed the three females to stop fighting and return to their respective cells, Askew instead ran into Benson's cell to continue fighting with Benson. (*Id.* ¶ 6.) Askew's theory—that the named Defendants failed to protect her from a risk of harm to which Askew herself contributed—is simply absurd. *Clark v. Johnson*, 181 F. App'x 606, 607 (7th Cir. 2006) (internal quotation marks omitted). Quite simply, "prison officials cannot reasonably be required to protect an inmate who intentionally instigates a violent altercation with another prisoner." *Id.*

9

Defendant Stubblefield will be DISMISSED WITHOUT PREJUDICE pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. The action will be DISMISSED.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 5-18-16
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge